# IN THE UNITED STATES DISTRICT COURT

# FOR THE MIDDLE DISTRICT OF TENNESSEE

# NASHVILLE DIVISION

RECEIVED
in Clerk's Office

OCT 1 1 2018

U.S. District Court
Middle District of TN

CLINTON STRANGE,

Plaintiff

v.

HEALTHSTREAM, INC.;

a Tennessee Domestic For-Profit Corporation

TWILIO INC.;

a Delaware Domestic Corporation

&

PHC-MINDEN G.P., INC.,

a Louisiana Business Corporation

Defendants

CIVIL ACTION:

COMPLAINT FOR VIOLATIONS OF THE:

TELEPHONE CONSUMER PROTECTION ACT OF 1991;

LOUISIANA CIVIL CODE- HEALTH CARE CONSUMER BILLING

AND DISCLOSURE PROTECTION ACT OF 2003;

LOUISIANA CIVIL CODE – LIABILITY FOR ACTS CAUSING DAMAGES;

TENNESSEE CODE- PRIVACY AND CONFIDENTIALITY;

TENNESSEE CONSUMER PROTECTION ACT OF 1977;

&

CALIFORNIA CONSUMER PRIVACY ACT OF 2018

1

DEMAND FOR JURY TRIAL

Preliminary Statement:

This is an action brought by an adult individual against Defendants PHC-MINDEN G.P.,
INC. d/b/a Minden Medical Center "MMC", HEALTHSTREAM, INC. "HS", and TWILIO,
INC. "TI" for violations to be outlined more fully in this complaint involving allegations of
violations of Federal Laws, and Laws of the States of Louisiana, Tennessee, and California.

Jurisdiction of this court arises under:

47 U.S. Code § 227(g)(2)

&

28 U.S. Code § 1331

Venue lies properly in this court pursuant to:

28 U.S. Code § 1391

&

47 U.S. Code § 227(g)(4)

**Parties:**

**Plaintiff** Clinton Strange is an adult individual residing at the address of:

Clinton Strange

7021 Winburn Drive

Greenwood, LA 71033

**Defendant HEALTHSTREAM, INC. "HS"** is a Tennessee Domestic For-Profit Corporation,

and according to Yahoo Finance "HealthStream, Inc. provides workforce and provider solutions

2

to the healthcare organizations in the United States. It operates in HealthStream Workforce Solutions and HealthStream Provider Solutions segments. The company offers workforce development solutions comprising software-as-a-service (SaaS) and subscription-based products to meet talent management, training, certification, competency assessment, performance appraisal, and development needs, as well as training, implementation, and account management services. It also provides applications for recruiting and applicant tracking; learning; performance appraisal; compensation management; succession planning; competency management; credentialing and privileging; provider enrollment; disclosure management; clinical development; simulation-based education; and industry-sponsored training. In addition, the company offers Echo Credentialing, a platform that manages medical staff credentialing and privileging processes; EchoOneApp, an enrollment platform; and EchoAccess, a platform that supports hospital call centers. Further, it provides Verity, a SaaS-based credentialing, privileging, and enrollment solution. The company markets its products and services to healthcare industry, including private, not for profit, and government entities, as well as pharmaceutical and medical device companies. HealthStream, Inc. was founded in 1990 and is headquartered in Nashville, Tennessee."

   **Defendant TWILIO INC. "TI"** is a Delaware Domestic Corporation, and according to Yahoo Finance "Twilio Inc. provides a cloud communications platform that enables developers to build, scale, and operate communications within software applications in the United States and internationally. The company's programmable communications cloud provides a set of application programming interfaces that enable developers to embed voice, messaging, and video capabilities into their applications. Twilio Inc. was founded in 2008 and is headquartered in San Francisco, California.".

**Defendant PHC-MINDEN G.P., INC. "MMC"** is a Louisiana Business Corporation, and according to Bloomberg "PHC-Minden, L.P. is a 159-bed acute care hospital that offers inpatient and outpatient healthcare services. The hospital's services include emergency care, ambulatory surgery, pediatric, obstetric and gynecologic, radiology, x-ray laboratory, diagnostic imaging, and physician referral. In addition, it provides cardiopulmonary, home healthcare, CT scanning, magnetic resonance imaging MRI, mobile lithotripsy, physical therapy rehabilitation, oncology, and neurology services. The hospital was founded in 1926 and is located in Minden, Louisiana. PHC-Minden, L.P. operates as a subsidiary of LifePoint".

**Factual Allegations:**

## CAUSE OF ACTION No.1:

### (Plaintiff v. MMC)

#### A. Mishandling or Alternatively Malpractice Regarding X-Ray Imaging Resulting in Economic Harm To Plaintiff.

1. Plaintiff is a compensable service-connected Disabled American Veteran of the Gulf-Warr era *See Exhibit M-A.*

2. Plaintiff suffered a back injury on or about May 28, 2002 while on active duty at Fort Leonard Wood, MO.

3. Nuclear Imaging was conducted on the Plaintiff between the dates of July 8, 2002 and November 13, 2002. It was noted at an Army Hospital that Plaintiff had "aspect changes" to his L4-L5 lumbar spine *See Exhibit M-B.*

4

4. Plaintiff over the course of 15 years developed worsening symptoms of "arthropathy" to his lumbar spine, and an MRI at The Overton Brooks V.A. Medical Center documented this condition on or about March 13, 2018 *See Exhibit M-C.*

5. The MRI showed that Plaintiff had "Minimal Modic Type I degenerative endplate changes present in the aspect of the L5-S1 disc", and "L4-L5: Mild facet arthropathy", along with "L5-S1: Mild facet arthropathy (left greater than right)".

6. Subsequent to the MRI results being made available to the Plaintiff he filed a disability claim for his Lower Back Condition with the VA.

7. The Plaintiff was contacted by a third-party contractor for the VA that coordinates examinations for disability claims at a High-Rate of speed pursuant to the VETERANS' BENEFITS IMPROVEMENTS ACT OF 1996.

8. The third-party contractor was Veterans Evaluation Services "VES".

9. VES arranged for the Plaintiff to have X-Rays done on his lumbar spine at Minden Medical Center on July 5, 2018.

10. The Plaintiff arrived at Minden Medical Center on-time July 5, 2018, and he sat down with an "administrator" who had him sign consent to treat forms, and consent to release medical information to third-parties forms concerning the imaging to be done. The Plaintiff did sign a document which the administrator refused to provide him a copy of that stated in part that Clinton Strange will be responsible for any part of the bill not covered by 'insurance'. The Plaintiff expressed his concerns about this to the "administrator" but was assured that MMC had an 'arrangement' with VES, so Plaintiff would not owe any money to MMC.

5

11. Plaintiff was 'summoned' to the Radiology department by a hospital employee after a brief wait in the lobby/waiting area, and the X-Ray tech conducted the imaging, and the Plaintiff went home.

12. The next day on July 6, 2018 at 12:30pm CST the Plaintiff met with Kenneth Betzing, PA at Fairfield Family Clinic, 1860 Fairfield Avenue, Shreveport, LA 71101 *See Exhibit M-D.*

13. Kenneth Betzing, PA expressed confusion at the disparity of the results between the Defendant MMC's X-Ray imaging, and the MRI results that the VA had performed just a few months earlier. He opined 'audibly' to the Plaintiff that this could cause problems with the VA disability claim. He (P.A. Betzing) filled out the VA disability questionnaire form regarding the claimed condition along with notes from the VA imaging, and the Defendant MMC's X-ray that showed a "normal lumbar spine".

14. Throughout August and Early September 2018, the Plaintiff underwent a total of 8 Physical Therapy sessions with Latonya Brown (Physical Therapist) at the Overton Brooks VA Medical Center in Shreveport, LA for his lower back issues and was 'discharged' September 5, 2018 from the Treatment Regiment due to some improvement, and Plaintiff's agreement to adhere to a continuation of a Home Exercise Program, and was also provided Prosthetic Aides (Lumbar Cushion Device & Semi-Rigid Lumbrosachral Corset) for the Plaintiff's Lower Back Conditions *See Exhibit M-E.*

15. Kenneth Betzing's hunch turned out to be sadly correct in that the 'disparity of the results' between the VA Imaging and the Defendant MMC's X-Rays could 'cause problems' with the Plaintiff's VA disability claim. The August 23, 2018 VA Decision

Letter stated in various sections highlighted that the decision has been "deferred for a medical opinion" *See Exhibit M-F.*

16. Plaintiff contends that had it not been for MMC's DEFECTIVE/INCORRECT/MIS-INTERPRETED OR ALTERNATIVELY NEGLIGENT X-Ray results the Plaintiff could even now TODAY could be 'realizing' a significant increase in his justifiably entitled Disability Compensation, but now that compensation award has been stalled due to the actions or alternatively the inactions of the Defendant MMC. This action or alternatively inaction by the Defendant MMC has caused Plaintiff serious economic injury, and Defendant MMC is liable to the Plaintiff for damages pursuant to Louisiana Civil Code Article 2315.

17. Defendant MMC is liable to Plaintiff for Medical malpractice because [t]he patient will be able to prove through evidence at trial several essential legal elements, including first the existence of a patient and provider relationship, in which a medical professional owed a professional duty of care to the patient.

18. The Plaintiff's claims will present a viable argument with supporting evidence and medical expert testimony that proves beyond a preponderance of the evidence that the routine medical standard of care towards a patient was violated, or that medical negligence had in fact occurred.

19. Plaintiff will prove through evidence at trial will prove beyond a preponderance of the evidence that the negligent actions of a given medical professional were the proximate or direct cause of damages sustained by the patient, who otherwise would not have incurred these damages had the negligent conduct by the medical professional not occurred.

7

20. Plaintiff will also prove through evidence at trial that also prove damages, or in short, tabulate and estimate the total costs and losses associated with a given negligent act and the ensuing medical, psychological, and financial fallout brought upon a patient sustaining iatrogenic injuries or damages

21. Plaintiff suffered iatrogenic injuries in the form of mental suffering, aggravation, emotional distress, and economic damages, as well as economic loss that is capable of being measured by a Competent Court of proper jurisdiction.

22. Plaintiff has Article III standing to bring an action against the Defendant in regard to this alleged Medical Malpractice Claim.

## B. Sending Plaintiff, a "Whopper" of a Medical Bill that Caused Plaintiff Mental Anguish and Distress in Violation of The Louisiana Health Care Consumer Billing and Disclosure Act

23. On or about August 19, 2018 the Defendant MMC sent a bill (dated August 13, 2018) to the Plaintiff that stated he owed MMC **$810.11** which at first made the Plaintiff very angry, upset, frustrated, aggravated, and distressed *See Exhibit M-G.*

24. Plaintiff later started to worry that the Defendant might begin taking collections actions against him and screw up his credit profile if he simply ignored the situation and did not get 'in-front' of the situation and address the issue.

25. The Plaintiff had to spend hours digging through his volumous pile of VA medical records to find out what VA 'contractor' sent him to MMC, and after discovering it was VES, then Plaintiff had to dig around more through his paperwork to discover a

8

telephone number for VES. This undertaking took a considerable amount of time and physical effort.

26. On August 22, 2018 at 12:15pm CST the Plaintiff phoned VES at 877-637-8387 and spoke with a Mrs. Carson Krogman who assured the Plaintiff that the issue would be 'taken care of' *See Exhibit M-H.*

27. On or about September 5, 2018 the Plaintiff received a 'not- very- re-assuring' letter from Defendant MMC that stated in part that "your patient responsibility has been paid in full at this time", but the letter went on to state that "…future adjustments …could affect your patient responsibility" which the Plaintiff interprets as this situation still may not be fully resolved *See Exhibit M-I.*

28. Plaintiff has suffered Mental anguish, and emotional distress together along with having to exert a largesque amount of measurable Physical and Mental Energy to work to resolve this 'billing' issue with Defendant MMC.

29. Defendant exhibited behavior actionable under Louisiana Civil Code Art. 22: 1871 to 1877 pertaining to violations of this act, and Plaintiff contends that Defendant MMC is liable to Plaintiff under this and other Legal Statutes.

## CAUSE OF ACTION No. 2:

### (Plaintiff v. MMC and Plaintiff v. HS)

### Violations of The Telephone Consumer Protection Act of 1991

30. Plaintiff has his Cellphone registered on the Federal Do-Not-Call Listing. It has been registered on the Listing since January 3, 2018 *See Exhibit M-J.*

9

31. Plaintiff received 2 unwanted text messages from the Defendant MMC that Plaintiff regarded as spam.

32. The text messages were not sent for an emergency purpose.

33. The text messages did NOT conform to The Health Insurance Portability and Accountability Act of 1996.

34. The text messages did not pertain to appointment and exam confirmations and reminders.

35. The text messages did not pertain to wellness check-ups.

36. The text messages did not pertain to hospital pre-registration instructions.

37. The text messages did not pertain to pre-operative instructions.

38. The text messages did not pertain to lab results.

39. The text messages did not pertain to post-discharge follow-up.

40. The text messages did not pertain to drug prescription notifications.

41. The text messages did not pertain to home healthcare instructions.

42. Plaintiff may have provided the MMC 'administrator' with his cellphone number in conjunction with his paperwork prior to undergoing the X-Ray, but he denies having given Defendant MMC consent to send him text spam messages to his wireless cellphone number 318-423-5057.

43. Plaintiff gave consent for MMC to release patient information to third-parties, but the extent of that consent was to be limited to the VA, VES, and other Physicians or Medical Practitioners who otherwise needed to have access to the imaging data to effectuate the processing of the Plaintiff's VA Disability claim in accordance with MMC's own privacy practices and policies.

44. Plaintiff denies giving consent for MMC to share his information with third-parties such as that of Defendant HS, Defendant TI, and Amazon.

45. If Plaintiff was deceived into signing a document that would give permission for MMC to disclose his information to parties not in 'the-loop' in regard to his VA disability claim (which Plaintiff denies doing) it would be because the MMC 'administrator' did not properly disclose to him that he was doing so.

46. MMC makes no mention in its 'Privacy Practices' (August 1, 2018 version) of text message spam 'surveys' that maybe conducted after a visit for outpatient services *See Exhibit M-K.*

47. MMC does not mention that they will share information regarding a patient with a third-party such as Defendant HS, Defendant TI, or subsequently Amazon.

48. MMC's sharing of any of Plaintiff's information 'De-Identified' or otherwise with Defendant HS, and or Defendant TI constitutes a willful and knowing violation of Tenn. Code Ann. § 68-11-1503, and Tenn. Code Ann. § 68-11-311.

49. Plaintiff received the first unwanted text spam from Defendants on July 13, 2018 at 12:57pm CST from Short Code 48798 *See Exhibit M-L.*

50. The text spam was sent to Plaintiff's cellphone number 318-423-5057 *See Exhibit M-M.*

51. The text spam contained message details *See Exhibit M-N.*

52. The Plaintiff received the second unwanted text spam from Defendants on July 24, 2018 at 11:47am CST from Short Code 48798 *See Exhibit M-O.*

53. The text spam contained message details *See Exhibit M-P.*

54. Defendant MMC was Registered with the Tennessee Secretary of State as a Foreign-Domestic-For Profit Corporation until March 13, 2018 *See Exhibit M-Q.*

55. Defendant MMC, according to the Louisiana Secretary of State; under charter number 34822936D has listed as its registered agent: CT Corporation System, 3867 Plaza Tower Drive, Baton Rouge, LA 70816 *See Exhibit M-R.*

56. Defendant MMC has listed itself under charter number 34822992J with the Louisiana Secretary of State as an Officer and General Partner of PHC-MINDEN, L.P. *See Exhibit M-S.*

57. The hyperlinks contained within Defendants text messages lead to a website operated by feywy.com and this website is registered to Defendant TI *See Exhibit T-A.*

58. The Plaintiff 'typed in' the hyperlink in the unwanted text spam on his home PC and was redirected to a website operated by the Defendant HS *See Exhibit H-A.*

59. Plaintiff will be able to show by evidence at trial that Defendant HS was the third-party 'agency' hired by Defendant MMC to initiate the unwanted text message campaign which cased text spam to be sent to Plaintiff's cellphone without Plaintiff's consent.

60. Under the common law of 'agency', Defendant MMC is vicariously liable for the actions of Defendant HS.

61. Plaintiff was harmed by the actions of the Defendant's MMC, HS, and TI by the text messages. Plaintiff had to exert a measurable amount of both Physical and Mental energy to respond to the Text Spams by walking to his phone, unlocking it, and reviewing the unwanted messages, and had to clear them off of his notification que.

62. Plaintiff alleges that he was charged for the text messages as that concept has been defined by the courts.

63. Plaintiff alleges that he has sufficient Article III standing under the U.S. Constitution to seek damages from the Defendants herein.

64. Plaintiff Denies having given Defendant MMC consent to send him text messages, but even if he did;  HE did not give permission to a Third, Fourth, or Fifth Party such as Defendants HS, TI, or the unnamed Fifth party Amazon.

## CAUSE OF ACTION No. 3:

### (Plaintiff v. HS and Plaintiff v. TI)

### Alleged Violations of Tennessee Code Regarding Privacy & Confidentiality

### &

### Violations of The California Consumer Privacy Act of 2018

65. Defendant TI operates a website feywy.com [w]hich shares the IP address and definitely shares, based on evidence, the server with Amazon Technologies, Inc., 410 Terry Avenue N., Seattle, WA 98109 (Amazon) *See Exhibit T-B.*

66. Defendant TI has in the past exhibited conduct or alternatively wanton reckless behavior in regard to information sharing and selling, and cautioned shareholders in a U.S. Securities and Exchange Commission filing report Form 10-Q on May 9, 2017 that referenced the company's ongoing litigation in a California Putative Class Action alleging violations of the California Invasion of Privacy Act. The suit is captioned as *Angela Flowers v. Twilio Inc.* Alameda Superior Court of California (filed February 18, 2016). The complaint in that case "alleges that the Company's products permit the interception, recording and disclosure of communications at a customer's request" *page 9 of 39. See Exhibit T-C.*

67. Defendant TI in the same Form 10-Q filing as referenced above outlined in broad strokes about the Company's Sales and marketing goals *See Page 15 of 39 Exhibit T-C.*

13

68. Defendant TI is keenly aware from their Form 10-Q filing of the risks of litigation from what they term as "customer misuse of our software" in regard to "unauthorized text messages in violation of the Telephone Consumer Protection Act" *Page 30 of 39. See Exhibit T-C.*

69. Defendant TI does "outsource substantially all of our cloud infrastructure to Amazon Web Services to operate our platform". Given the ALLEGED history of disclosure of third-party data accusations that Defendant has faced in the past it does not seem to far of a stretch for Plaintiff to reason that Defendant TI has shared portions of his data as a fourth-party to a fifth-party which is Amazon in the normal course of business operations *(page 23 of 39) See Exhibit T-C.*

70. Defendant MMC contracted out the 'sending' of the unwanted text messages to Defendant HS, and HS in turn utilized the text messaging Platform operated by TI which outsources "substantially all of their cloud infrastructure to Amazon Web Services to operate" their messaging platform.

71. Plaintiff will be able to show by evidence at trial that Defendant HS was the third-party 'agency' hired by Defendant MMC to initiate the unwanted text message campaign which cased text spam to be sent to Plaintiff's cellphone without Plaintiff's consent. In order to accomplish this 'task' Defendant MMC would have had to disclose certain 'identifying information' pertaining to the Plaintiff herein with Defendant HS.

72. Defendant HS then outsourced or utilized Defendant TI's 'platform' that would have involved sharing or disclosing certain 'identifying information' pertaining to the Plaintiff herein with Defendant TI.

73. Since Defendant TI does not actually have the infrastructure necessary to complete the tasks that Defendant MMC intended to be performed by Defendant HS, Defendant TI would have had to disclosing certain 'identifying information' pertaining to the Plaintiff herein with Amazon Web Services (Amazon), and Defendant TI references their lack of infrastructure in the Form 10-Q filed on May 9, 2017.

74. As a fifth party it cannot be known what Amazon might possibly do with Plaintiff's information that was shared with them in violation of Privacy and Confidentiality Laws of the States of Tennessee and California.

75. Defendant HS is registered with the Tennessee Secretary of State under Control number 000233053 *See Exhibit H-B.*

76. Defendant HS is the dedicated short code subscriber for Code 48798 where the unwanted text spam originated from *See Exhibit H-C.*

77. Defendant HS last updated their 'Privacy Statement' on January 13, 2015. Plaintiff never consented to be bound by the terms and conditions listed in or pertaining to Defendant HS's Privacy Statement *See Exhibit H-D.*

78. Defendant TI last filed a Statement of Information with the California Secretary of State on May 7, 2018 *See Exhibit T-D.*

79. Defendant TI last filed a Corporate Disclosure Statement with the California Secretary of State on August 8, 2018 *See Exhibit T-E.*

80. Defendant TI is a Delaware Domestic Corporation formed on or about March 13, 2008 *See Exhibit T-F.*

81. Defendant TI is considered to be 'an Amazon Company' *See Exhibit T-G.*

82. Defendant TI last updated their Privacy Statement on May 31, 2018 *See Exhibit T-H.*

83. Plaintiff never consented to be bound by any means with any of the terms and conditions as described in TI's Privacy Statement.

84. Defendant TI is headquartered and mainly conducts business in San Francisco, CA.

85. Defendant TI is subject to California Laws including the California Consumer Privacy Act of 2018. The 'Act' was passed and signed into law by Governor Jerry Brown on June 28, 2018 *See Exhibit T-I.*

86. Defendant TI according to Financial News reports is "more partner than competitor" *See Exhibit T-J.*

87. Defendant TI has a 'relationship' with Amazon Web Services with delivery of SMS (Text messages) for simple notification service *See Exhibit T-K.*

88. Defendant TI lays out its 'solutions' for prospective client 'users' of TI's text-marketing solutions on its website twillio.com. This webpage section lists Seth Robotham as the Chief Marketing Officer of Defendant TI on page 5 of 6 *See Exhibit T-L.*

89. Defendant TI, and Defendant HS are liable for damages to Plaintiff for any and all claims that he will be able to prove through evidence at trial for Privacy rights and Confidentiality rights that were violated under the Laws and Statutes of the States of Tennessee and California.

90. Defendant HS is vicariously liable to the Plaintiff herein for any and all actionable conduct of Defendant TI under the common law of 'agency', because Defendant TI was acting under the direct supervision, or alternatively the 'direction' of Defendant HS.

91. Defendant TI conducts business in California, and Amazon conducts business in Seattle, WA. Any offensive or violative conduct committed by Defendant TI would have occurred in the State of California, and California Law would apply including the

16

transmittal of Plaintiff confidential, or other types of Plaintiff's information to Amazon Web Services.

92. Defendant HS while being located in Tennessee would be liable for the conduct of Defendant TI under those California Privacy Laws as well as the Laws regarding Privacy and Confidentiality of the Laws of the State of Tennessee because they (TI) were operating under the common law of 'agency'.

93. Defendant TI owns or alternatively maintains or seeks to maintain the patent rights to the 'software' only.

94. Defendant TI has to transmit any data they want transmitted to Amazon (in this case a fifth-party) via the Amazon Web Service infrastructure. Defendant TI did transmit data to Amazon web services in regard to the Plaintiff.

95. Defendant TI did not have Plaintiffs consent to have any of his identifiable Information or De-Identified information collected or shared with other parties.

96. Defendant HS did not have Plaintiffs consent to have any of his identifiable Information or De-Identified information collected or shared with other parties.

**Plaintiffs Conclusionary Statements Applicable to All Parties:**

97. At all times pertinent hereto Defendants were acting by and through their agents, servants and / or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

98. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/ or employees was intentional, reckless, and in

17

grossly negligent disregard for Federal Law and State Laws and the rights of the Plaintiff herein.

## Count I:

### (Plaintiff v. MMC)

99. Plaintiff incorporates the foregoing paragraphs as though the same were set forth herein at length.

100.     Defendant is Liable to the Plaintiff for all Violations of the Telephone Consumer Protection Act both part (c)(5), and (b)(1)(a) ; Defendant is liable to the Plaintiff for the full amount of statutory damages, ($500-$1500 at the discretion of the court for each violation) along with the attorney's fees and cost of litigation, as well as such further relief, as may be permitted by law.

## Count II:

### (Plaintiff v. HS)

101.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth herein at length.

102.     Defendant is Liable to the Plaintiff for all Violations of the Telephone Consumer Protection Act both part (c)(5), and (b)(1)(a) ; Defendant is liable to the Plaintiff for the full amount of statutory damages, ($500-$1500 at the discretion of the court for each violation) along with the attorney's fees and cost of

litigation, as well as such further relief, as may be permitted by law.

**Count III:**

(Plaintiff v. All Defendants)

103.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth
herein at length.

104.     Defendants are liable to Plaintiff for State Law Violations for any and all proved
allegations of Privacy Rights violations proved through evidence at trial.

**Count IV:**

(Plaintiff v. MMC)

105.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth
herein at length.

106.     Defendant exhibited behavior actionable under Louisiana Civil Code Art. 22:
1871 to 1877 pertaining to violations of this act, and Plaintiff contends that Defendant
MMC is liable to Plaintiff under this and other Legal Statutes.

**Count V:**

(Plaintiff v. MMC)

107.     Plaintiff incorporates the foregoing paragraphs as though the same were set forth
herein at length.

108.     Defendant MMC is liable to Plaintiff for Economic Loss together along with
worry, anguish, anxiety, and emotional distress caused by alleged medical malpractice
under the laws of the State of Louisiana included but not limited to Louisiana Civil Code
Art. 2315.

109.     Plaintiff seeks damages as to be determined by the court regarding this count.

19

**JURY TRIAL DEMANDED**

**Plaintiff seeks trial by jury on all issues so triable.**

Prayer for Relief;

WHEREFORE, Plaintiff seeks judgement in Plaintiff's favor and damages against the Defendant, based on the following requested relief:

Statutory Damages;

Stacked Damages;

Treble Damages;

Enjoinder from Further Violations of These Parts;

Costs and reasonable attorney's fees;

, and such other and further relief as may be necessary, just and proper.

Respectfully Submitted,

X _____  10-9-2018

Clinton Strange

Pro-Se

7021 Winburn Drive

Greenwood, LA 71033

318-423-5057

**parsmllc@gmail.com**

RECEIVED
in Clerk's Office

OCT 1 1 2018

U.S. District Court
Middle District of TN

Clinton Strange

7021 Winburn Drive

Greenwood, LA 71033

318-423-5057

PARSMLLC@gmail.com

Dear Clerk:

Please find the following enclosed documents pertaining to an action to be filed in this court captioned as *Strange v. Healthstream, Inc. et al* or however the Clerk wishes to caption it:

1- Civil Cover Sheet
2- Original Pleading (the complaint).
3- *In forma Pauperis* Application Form w/ Exhibits A-D attached
4- Exhibit Index
5- Exhibits

   I am a Non-Prisoner Pro Se litigant. I am not set up for electronic filing.

   Should the Clerk find deficiencies in my complaint or any violations of local rules that I have overlooked please do not hesitate to contact me utilizing contact information in the header of this communication by any means desired.

Regards,
X _____       10-9-2018
   Clinton Strange                       Dated



Get US Tio
2138460638-03

**PRIORITY MAIL 2-Day ®**

1004

EXPECTED DELIVERY DAY: 10/11/2018  C019

**USPS TRACKING NUMBER**

9505 5152 0807 8282 0671 81

Clinton Strange
7021 Winburn Drive
Greenwood, LA 71033

Clerk, U.S. Courthouse

Estes Kefauver Federal Building & Courthouse

801 Broadway, Room 800

Nashville, TN 37203